In re

Debtor(s)

)  Case No. _____
)
)  NOTICE OF MOTION FOR
)  RELIEF FROM AUTOMATIC
)  STAY IN A CHAPTER 11/12 CASE,
)  AND OF HEARING THEREON

**YOU ARE NOTIFIED THAT**:

1.  A motion was filed by,_____,for the relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 USC §362.

2.  The name and address of the moving party's attorney (or moving party, if no attorney) are:

3.  If you wish to resist the motion you must, within 14 days of the service date shown below, file a written response with the Clerk of the Bankruptcy Court and, if served in paper, a certificate showing a copy of the response has been served on the moving party's attorney.

4.  Contents of Response.  A response must state the facts upon which relief from the automatic stay is resisted. See Local Form #720.50 for details.

5.  **If you file a timely Response**:

    A Hearing on the motion will be held as follows:

    **Date:**_____          **Time:**_____

    **Location**:  ☐     Courtroom #____ , _____

                   ☐     Telephone Hearing  [**NOTE**: See LBF #888, Telephone Hearing Requirements]
                         **Call In Number:**       (888) 684-8852
                         **Access Code:**           ☐ 8622907 for Judge Frank R. Alley (fra)
                                                    ☐ 4950985 for Judge Trish M. Brown (tmb)
                                                    ☐ 5870400 for Judge David W. Hercher (dwh)
                                                    ☐ 1238244 for Judge Peter C. McKittrick (pcm)
                                                    ☐ 3388495 for Judge Thomas M. Renn (tmr)
                                                    ☐ Other_____

    NO TESTIMONY will be taken at the hearing.

6.  **If a timely response is not filed**, then either:

    a.  The court may sign an ex parte order, submitted by the moving party, granting relief from the stay;

    or

    b.  The stay will expire under the terms of 11 USC §362(e) 30 days after the motion was filed.

                   CLERK, U.S. BANKRUPTCY COURT
                   (If filing in paper and if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; or if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401)

I certify that on _____ copies of (1) this Notice, (2) Local Form #720.50 if this Notice was served on paper, (3) Local Form #888 if this Notice was served on paper and a Telephone Hearing will be held,  and (4) the Motion, were served on the Debtor(s), U.S. Trustee, and on the following parties, if any:  Trustee, Creditors' Committee Chairperson, and their respective attorneys.

_____
Signature of Moving Party or Attorney

1124 (1/17/17)

Michael Scott, OSB# 973947
**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204
Phone (971) 201-3200
Fax (971) 201-3202

Attorneys for Deutsche Bank National Trust
Company, as Trustee, in trust for registered
Holders of WaMu Asset-Backed Certificates
WaMu Series 2007-HE1 Trust

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re: | Case No.: 17-33139-tmb11 |
| RenX Group II, LLC, | Chapter 11 |
| Debtor | MOTION FOR ORDER CONFIRMING STAY NOT IN EFFECT OR ANNULING STAY AND VALIDATING SALE |

Pursuant to 11 USC §362(d)(1), (2), and (4), Deutsche Bank National Trust Company, as

Trustee, in trust for registered Holders of WaMu Asset-Backed Certificates WaMu Series 2007-

HE1 Trust through its servicer Select Portfolio Servicing, Inc. ("Creditor") moves this court for

an Order confirming that the automatic stay of 11 U.S.C. § 362 was not in effect at the time of

foreclosure sale; or, in the alternative, an Order granting retroactive relief from, or annulment of,

the stay to permit Creditor to validate and complete the foreclosure of its security interest in the

Property.  In support of the Motion, Creditor alleges:

## I.  Factual Background:

1.      This Motion affects the real property commonly known as **87287 E Government Camp
        Loop Government Camp, OR 97028** (the "Property"). The full legal description of the
        Property is listed on the Deed of Trust.

2.      Creditor was entitled to receive payments pursuant to a Note dated December 7, 2006
        (the "Note"), in the original principal amount of $855,000.00.  The Note was secured
        by a Deed of Trust on the Property, recorded in Clackamas County, Oregon on

December 11, 2006 as Instrument No. 2006-113655.  The Note and Deed of Trust are attached hereto as Exhibits 1 and 2, respectively, and are incorporated herein by this reference.

3.      The Deed of Trust, which has been assigned to Creditor, properly encumbered the Property and secured payment of the Note.  The Assignment of Deed of Trust is attached hereto as Exhibit 3 and incorporated herein by this reference.  Creditor was thus entitled to enforce the terms of the security instruments encumbering the Property.

4.      Creditor has standing to bring this Motion because it was the Holder of the Original Promissory Note that creates the loan obligation and the beneficiary under the Deed of Trust that encumbers the Property.

5.      John Burton and Marylou Burton ("Borrowers") are the sole borrowers on the Note and Deed of Trust.

6.      Borrower Marylou Burton filed Chapter 7 bankruptcy case 12-34768-rld7, and her interest in the Property was transferred by the Chapter 7 Trustee to Big Blue Capital, LLC by way of a Trustee's Deed recorded in Clackamas County, Oregon on December 4, 2012 as Instrument No. 2012-079781.  A copy of the Trustee's Deed is attached hereto as Exhibit 4 and incorporated herein by this reference.  Creditor's consent was neither sought nor given for this transfer of interest.

7.      A General Judgment of Foreclosure with respect to the Property was entered in favor of Creditor on February 12, 2014 in Circuit Court of the State of Oregon for Clackamas County Case No. CV12090655. A copy of the General Judgment of Foreclosure is attached hereto as Exhibit 5 and incorporated herein by this reference.

8.      Big Blue Capital, LLC NKA RenX Group, LLC transferred its interest in the Property to Debtor RenX Group II, LLC by way of a Bargain and Sale Deed recorded in Clackamas County, Oregon on March 1, 2016 as Instrument No. 2016-014355.  A copy of this Bargain and Sale Deed is attached hereto as Exhibit 6 and incorporated herein by this reference.  Creditor's consent was neither sought nor given for this transfer of interest.

9.      According to the Corrected Writ of Execution issued on April 28, 2017, the amount owed on the foreclosed lien totaled $1,569,119.01, including post-judgment interest through

Motion to Validate Sale  - 2
MH#OR-17-139558

**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204
(971) 201-3200

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

April 10, 2017 and continuing with a per diem of $301.26. A copy of the recorded Writ of Execution is attached hereto as Exhibit 7 and incorporated herein by this reference.

10.    A Sheriff's sale of the Property was held on August 22, 2017 at 10:00 AM. The Property was sold to third party Vantage Homes, LLC & Rain City Capital of Oregon, LLC, and a Sheriff's Certificate of Sale was issued to the purchaser. A copy of the Sheriff's Return of Writ of Execution is attached hereto as Exhibit 8 and incorporated herein by this reference.

11.    Debtor RenX Group II, LLC filed this bankruptcy case on August 22, 2017 at 10:37 AM. A copy of the Notice of Bankruptcy Case Filing is attached hereto as Exhibit 9 and incorporated herein by this reference.

12.    The Sheriff's Return of Writ of Execution, Exhibit 8, was filed with the Clackamas County Circuit Court on September 11, 2017. Pursuant to ORS 18.948(1), the Sheriff's sale is conclusively established to have been conducted in the manner required by Oregon law (ORS 18.860 to 18.993), as no party in interest filed an objection to the sale within 10 days from the filing of the Sheriff's Return of Writ of Execution.

13.    Debtor lists the value of the Property at $750,000 in the Schedule A filed in this bankruptcy case. There is no equity in the Property.

## II.  Legal Argument:

### A.  The Automatic Stay Was Not in Effect at the Time of Sale.

The Sheriff's sale was conducted in accordance with Oregon law at 10:00 AM on August 22, 2017. Debtor's Chapter 11 case was filed at 10:37 AM on August 22, 2017. Accordingly, the automatic stay under 11 U.S.C. § 362 was not in effect at the time of the Sheriff's sale, and Creditor requests an Order confirming the stay was not in effect at the time of the sale.

### B.  The Automatic Stay Should Be Annulled to Validate the Sale.

1.    In the alternative, Creditor is entitled to an Order granting relief from stay under 11 U.S.C. § 362 (d)(1), (2), and/or (4).

2.    The Court has authority under § 362(d) to grant relief from stay "by terminating, annulling, modifying or conditioning" the automatic stay. While actions taken in

**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204
(971) 201-3200

violation of the stay are otherwise void, such actions may be declared valid by the Court if cause exists for retroactive annulment of the stay. *Schwartz v. United States (In re Schwartz),* 954 F2d 569, 573 (9th Cir. 1992); *Cruz v. Stein Strauss Trust #1361, PDQ Investments, LLC (In re Cruz),* 2014 WL 4258990, No. CC-13-1554-KiTaD (9th Cir. BAP 2014). "Section 362(d) gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *Schwartz,* 954 F2d at 572.

3.  The two primary factors in determining whether Creditor is entitled to retroactive relief, or annulment, of the automatic stay are: "(1) whether the creditor was aware of the bankruptcy petition; and, (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp),* 129 F3d 1052, 1055 (9th Cir. 1997). In the present case, there was no bankruptcy petition filed by Debtor until after the Sheriff commenced sale of the Property. Debtor engaged in unreasonable and inequitable conduct by not filing the bankruptcy case until after the sale was held. In addition, prejudice would result to both the Creditor and the third party purchaser of the Property if it is required to unwind the foreclosure sale. Therefore, both prongs of the test for retroactive relief from stay are met.

4.  There are additional factors which the Court should consider in assessing the equities for retroactive relief: (1) the number of filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief if not made retroactive, including whether harm exists to a bona fide purchaser; (4) the debtor's overall good faith (based on the totality of circumstances); (5) whether creditors knew of the stay, but nonetheless took action, thus compounding the problem; (6) whether the debtor has complied, and is otherwise complying with the Bankruptcy Code and Rules; (7) the relative ease of restoring parties to the status quo ante; (8) the costs of annulment to debtors and creditors; (9) how quickly creditor moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct; (10) whether, after learning of the bankruptcy, creditor proceeded to take steps in continued violation of the stay, or

Motion to Validate Sale - 4
MH#OR-17-139558

**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204
(971) 201-3200

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

whether they moved expeditiously to gain relief; (11) whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies. *In re Fjelsted*, 293 B.R. 12, 25 (9th Cir. BAP 2003).

5.      The above factors weigh in favor of annulment of the automatic stay:

    a.    Debtor has not filed multiple bankruptcy cases, but Debtor's sole member and manager Tracey Baron ("Baron") has caused other entities which are under Baron's control to file bankruptcy cases just prior to foreclosure, and in some situations after foreclosure as in this case. This pattern reflects the intent to delay and hinder creditors and a lack of good faith by Debtor.

    b.    Creditor was not notified of, and did not give consent to the prior transfers of interest in the Property.

    c.    Debtor had notice of the pending Sheriff's sale and did not file its bankruptcy case until after the sale.

    d.    The bankruptcy case was not filed, and the automatic stay was not in effect, at the time the Sheriff commenced sale of the Property.

    e.    A third party was the bona fide purchaser of the Property.

    f.    Debtor did not file an objection to the Sheriff's Return of Writ of Sale pursuant to ORS 18.948(1).

    g.    Annulment will not cause irreparable injury to Debtor because the Property is only one of several properties which Debtor had acquired for its rental and renovation business.

    h.    Debtor has not made loan payments or any significant investment in the Property, and there is no equity in the Property.

    i.    Annulment of the stay will restore the status quo and will promote efficiency with respect to the Property.

6.      Debtor has failed to make pre- or post-petition loan payments, and Debtor has not demonstrated the ability to maintain the necessary payments. Therefore, Creditor is not adequately protected and is entitled to relief from stay under §362(d)(1).

7.      There is no equity in the Property, and the Property is not necessary to an effective reorganization. Accordingly, Creditor is entitled to relief from stay under §362(d)(2).

Motion to Validate Sale  - 5
MH#OR-17-139558

**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204
(971) 201-3200

8.      The Property was involved in an unauthorized transfer which was part of a scheme to delay, hinder, or defraud Creditor, and relief from stay should be granted under §362(d)(4)(A).

9.      The following documents are attached as Exhibits to this Motion:

    a.  Exhibit 1 - Creditor's file copy of the Promissory Note.

    b.  Exhibit 2 - Deed of Trust.

    c.  Exhibit 3 –Assignment

    d.  Exhibit 4 –Trustee's Deed

    e.  Exhibit 5 – General Judgment of Foreclosure

    f.  Exhibit 6 – Bargain and Sale Deed

    g.  Exhibit 7 – Writ of Execution

    h.  Exhibit 8 – Sheriff's Return of Writ of Execution

    i.  Exhibit 9 – Notice of Bankruptcy Case Filing


WHEREFORE, Creditor requests:

1.      An Order confirming that the automatic stay was not in effect at the time of the Sheriff's sale of the Property;

2.      Alternatively, an Order annulling the automatic stay and validating the sale;

3.      An Order waiving the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3);

4.      Alternatively, an Order requiring adequate protection of Creditor's interest in the Property;

5.      Such other relief as the Court deems proper.


Dated: October 13, 2017                 /s/ Michael Scott
                                         Michael Scott, OSB# 973947
                                         **McCarthy & Holthus, LLP**
                                         920 SW 3rd Avenue, 1st Floor
                                         Portland, OR 97204

                                         Attorney for Creditor

Motion to Validate Sale  - 6
MH#OR-17-139558

**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204
(971) 201-3200

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

# EXHIBIT 1



# FIXED/ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY INITIAL FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

December 7, 2006        Lake Oswego                    Oregon
      [Date]                     [City]                       [State]



87287 E Government Camp Loop, Government Camp, OR 97028
                    [Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 855,000.00           (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Washington Mutual Bank           .

I will make all payments under this Note in the form of cash, check or money order.  I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.700      %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on February 1       , 2007    . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on January 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Washington Mutual Bank, P.O.Box 3139, Milwaukee, WI 53201-3139
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 6,695.78           . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of January    , 2009   , and the interest rate I will pay may change on that day every 6th       month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Four and 99/100 percentage point(s) (4.990      %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.700      % or less than 8.700      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One           percentage point(s) (1.000      %) from the rate of interest I have been paying for the preceeding 6           months. My interest rate will never be greater than 14.700      % or less than 8.700      %.

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment at any time. If I make a Full Prepayment, I may be charged a fee as follows:

If Note Holder receives a Full Prepayment on or before the first anniversary of the date of the Note, the prepayment fee shall be equal to Three percent ( 3.000 %) of the original loan amount. If Note Holder receives a Full Prepayment after the first anniversary but on or before the second anniversary of the date of the Note, the prepayment fee shall be TWO percent ( 2.000 %) of the original loan amount. XXXXX XXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXX. Thereafter, prepayment of the Note shall be permitted without any prepayment fee.

When I make a Full or Partial Prepayment, I will notify the Note Holder in writing that I am doing so. Any Partial Prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial Prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Note Holder agrees in writing to such changes.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument provides as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Section 18 of the Security Instrument shall then instead provide as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

> If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
John Burton                      -Borrower

_____ (Seal)
MaryLou Burton                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR

[Sign Original Only]

Pay to the order of
***
Without Recourse
WASHINGTON MUTUAL BANK, FA

By _____
CYNTHIA RILEY
VICE PRESIDENT

*** Deutsche Bank National Trust COmpany as
    Trustee for WaMu Series 2007-HE1 Trust

# EXHIBIT 2

Clackamas County Official Records
Sherry Hall, County Clerk

2006-113655

$126.00

12/11/2006 10:31:10 AM

M-TD        Cnt=1  Stn=13  BARBARA
$105.00  $11.00  $10.00

Until a change is requested all tax statements shall be sent
to the following address.

WHEN RECORDED MAIL TO
Washington Mutual Bank
2210 Enterprise Drive, Doc Ops - ████
Florence, SC 29501

TAX ACCOUNT NUMBER

True and Actual Consideration is:
$ 855,000.00

———————[Space Above This Line For Recording Data]———————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated December 7, 2006          ,
together with all Riders to this document.

**(B) "Borrower"** is John Burton And  ~~Marybou~~ Burton, ~~Husband~~~~And~~~~Wife~~
                       Mary Lou            As Tenants By The Entirety

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is Washington Mutual Bank

Lender is a federal association
organized and existing under the laws of the United States                          .
Lender's address is 1400 South Douglass Road, Suite 100, Anaheim, CA 92806
                                                                                     .
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is ~~TBD~~ FIDELITY NATIONAL TITLE                          .

OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3038  1/01



VMP®-6(OR) (0510)
Page 1 of 15                    Initials: ___
VMP Mortgage Solutions, Inc.

FIDELITY NATIONAL TITLE CO.

**(E) "Note"** means the promissory note signed by Borrower and dated December 7, 2006 .
The Note states that Borrower owes Lender Eight Hundred Fifty Five Thousand and
No/100 Dollars
(U.S. $ 855,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 1, 2037 .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [X] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
[ ] VA Rider    [ ] Biweekly Payment Rider    [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Order:
Doc: ORCLAC:2006 00113655     Page 2 of 21     Requested By: andrewf, Printed: 9/25/2017 11:13 AM

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of CLACKAMAS :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

Legal Description Attached Hereto And Made A Part Hereof

which currently has the address of

87287 E Government Camp Loop                                          [Street]
Government Camp                          [City] , Oregon 97028        [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP -6(OR) (0510)                    Page 3 of 16          Initials           Form 3038  1/01

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Order:      Page 4 of 21      Requested By: andrewf, Printed: 9/25/2017 11:13 AM
Doc: ORCLAC:2006 00113655
Case 17-33139-tmb11    Doc 37    Filed 10/13/17

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with


Order: [redacted]                    Page 6 of 21                    Requested By: andrewf, Printed: 9/25/2017 11:13 AM
Doc: ORCLAC:2006 00113655

Case 17-33139-tmb11      Doc 37      Filed 10/13/17

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

VMP®-6(OR) (0510)

Page 7 of 15

Initials: ___

Form 3038 1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**


Order:

Doc: ORCLAC:2006 00113655

Page 8 of 21

Requested By: andrewf, Printed: 9/25/2017 11:13 AM

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Order: 

Doc: ORCLAC:2006 00113655

Page 9 of 21

Requested By: andrewf, Printed: 9/25/2017 11:13 AM

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials

10

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

11

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

17

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

*27. Required Evidence of Property Insurance.*

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

 -6(OR) (0510)

Page 13 of 15

Initials: 

Form 3038  1/01

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                             John Burton            -Borrower

_____    _____ (Seal)
                             Marylou Burton         -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                          -Borrower

**STATE OF OREGON,**

On this 7th day of December, 2006, personally appeared the above named

John Burten and Mary Lou Burten

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires:

(Official Seal)

Before me:

*Kathi J Lawrene*

Notary Public for Oregon

OFFICIAL SEAL
**KATHI J LAWRENCE**
NOTARY PUBLIC-OREGON
COMMISSION NO. 375257
MY COMMISSION EXPIRES DEC. 7, 2007

Initials: _____

14

# FIXED/ADJUSTABLE RATE RIDER

THIS FIXED/ADJUSTABLE RATE RIDER is made on this  7th        day of  December       ,
2006    , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to  Washington Mutual
Bank
("Lender") of the same date and covering the property described in the Security Instrument and located at:
87287 E Government Camp Loop, Government Camp, OR 97028

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE FROM THE
INITIAL FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND
FOR CHANGES IN THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   The Note provides for an initial fixed interest rate of               8.700 %.  The Note
provides for a change in the initial fixed interest rate to an adjustable interest rate and for changes in the
monthly payments, as follows:
**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The initial fixed interest rate Borrower will pay will change to an adjustable interest rate on the first
day of   January, 2009                     , and the interest rate Borrower will pay may change
on that day every   6th        month thereafter. Each date on which Borrower's interest rate could
change is called a "Change Date."
   **(B) The Index**
   Beginning with the first Change Date, Borrower's interest rate will be based on an Index. The "Index"
is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London
market ("LIBOR"), as published in **The Wall Street Journal.**  The most recent Index figure available as of
the date 45 days before the Change Date is called the "Current Index."

Fixed/Adjustable Rate Rider - Libor                                   ████████████

*16*

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give Borrower notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate Borrower's new interest rate by adding Four and 99/100                     percentage points (                4.990 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be Borrower's new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that Borrower is expected to owe at the Change Date in full on the Maturity Date at Borrower's new interest rate in substantially equal payments. The result of this calculation will be the new amount of Borrower's monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate Borrower is required to pay at the first Change Date will not be greater than 10.700 % or less than   8.700%. Thereafter, Borrower's interest rate will never be increased or decreased on any single Change Date by more than One                    percentage point(s) ( 1.000%) from the rate of interest Borrower has been paying for the preceding months. Borrower's interest rate will never be greater than         14.700 % or less than          8.700 %.

**(E) Effective Date of Changes**

Borrower's new interest rate will become effective on each Change Date. Borrower will pay the amount of Borrower's new monthly payment beginning on the first monthly payment date after the Change Date until the amount of Borrower's monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to Borrower a notice of any changes in Borrower's interest rate and the amount of Borrower's monthly payment before the effective date of any change. The notice will include information required by law to be given to the Borrower and also the title and telephone number of a person who will answer any question Borrwer may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 18 of the Security Instrument is amended to read as follows:

**(A)** Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Covenant 18 of the Security Instrument provides as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Fixed/Adjustable Rate Rider - Libor

17

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

**(B)** When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Covenant 18 of the Security Instrument shall then instead provide as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
John Burton                                                     -Borrower

_____ (Seal)
Marylou Burton                                              -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower

[Sign Original Only]

Fixed/Adjustable Rate Rider - Libor

18

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 7th day of December, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to Washington Mutual Bank

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:
87287 E Government Camp Loop, Government Camp, OR 97028

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

---

**MULTISTATE SECOND HOME RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3890 1/01**
VMP-365R (0411)     Page 1 of 2     Initials: ___
VMP Mortgage Solutions, Inc. (800)521-7291

19

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ (Seal)
John Burton                    -Borrower

_____ (Seal)
MaryLou Burton                 -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

VMP®-365R (0411)                Page 2 of 2                **Form 3890 1/01**

$\mathcal{W}$

# EXHIBIT "ONE"

The West one-half of Lot 18, IDA DARR SUBDIVISION, as cut off by a line drawn along the extension of the boundary between Lots 13 and 14 of said IDA DARR SUBDIVISION, Clackamas County, Oregon



2

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

# EXHIBIT 3

**Clackamas County Official Records**
**Sherry Hall, County Clerk**

**2010-016726**

**$47.00**

03/19/2010 01:27:45 PM

M-TDA      Cnt=1  Stn=7  BARBARA
$5.00 $16.00 $16.00 $10.00

AFTER RECORDING RETURN TO:
Shapiro & Sutherland, LLC
5501 N.E. 109th Court, Suite N
Vancouver, WA 98662

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned, as Beneficiary, hereby grants, conveys, assigns and transfers to Deutsche Bank National Trust, as trustee for WaMu Series 2007-HE1 Trust, whose address is 7255 Baymeadows Way, Jacksonville, Florida 32256, its successors and assigns, all beneficial interest under that certain Deed of Trust, dated December 7, 2006, executed by John Burton and Mary Lou Burton, as tenants by the entirety, Grantor, to Fidelity National Title, Trustee, and recorded on December 11, 2006, as Recorder's Fee No. 2006-113655, Clackamas County, State of Oregon, describing land therein as:

The West one-half of Lot 18, IDA DARR SUBDIVISION, as cut off by a line drawn along the extension of the boundary between Lots 13 and 14 of said IDA DARR SUBDIVISION, Clackamas County, Oregon.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or the accrue under said Deed of Trust.

Dated ___June 16___, 2009

JPMorgan Chase Bank, National Association, successor in interest to Washington Mutual Bank

By _____
(Name-Title)       Eric Tate      Attorney in Fact

By _____
(Name-Title)      Rick Wilken      Attorney in Fact

STATE OF _MN_____ )
                  )ss.
County of _DAKOTA_ )

On this _16_ day of ___June___, 2009, before me, the undersigned a Notary Public in and for the State of ___MN___, duly commissioned and sworn, personally appeared ___Eric Tate___ and ___Rick Wilken___ to me known to be the ___Attorney in Fact___ and ___Attorney in Fact___ of JPMorgan Chase Bank, National Association, successor in interest to Washington Mutual Bank, the corporation that executed the foregoing instrument, and acknowledge the said therein instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein, mentioned, and on oath stated that (s)he is authorized to execute the said instrument and that the seal affixed is the corporate seal of said corporation. Witness my hand and official seal hereto affixed the day and year first above written.

_____
Notary Public in and for the State of MN
My commission expires: _1/31/1_

SHOUA MOUA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2012

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

# EXHIBIT 4



35
58

**AFTER RECORDING RETURN TO:**
Big Blue Capital, LLC
c/o Jeffrey A. Long
4040 SW Douglas Way
Lake Oswego, OR 97035

**UNTIL A CHANGE IS REQUESTED, ALL TAX STATEMENTS SHALL BE SENT TO:**
Big Blue Capital, LLC
c/o Jeffrey A. Long
4040 SW Douglas Way
Lake Oswego, OR 97035

Clackamas County Official Records
Sherry Hall, County Clerk

2012-079781

$58.00

12/04/2012 09:19:59 AM

D-DTR        Cnt=1 Stn=9  DIANNAW
$15.00 $16.00 $17.00 $10.00

## CORRECTION TRUSTEE'S DEED

KNOW ALL MEN BY THESE PRESENTS that the Bankruptcy Estate of Mary Louise Burton, Bankruptcy Case No. 12-34768-rld7, now pending in the United States Bankruptcy Court for the District of Oregon, by and through its duly appointed and acting Chapter 7 Trustee, **Peter C. McKittrick ("Trustee"),** herein called **"Grantor,"** whose current address is 515 NW Saltzman Rd, PMB #917 Portland Or. 97229, acting in his capacity as Trustee and not individually, by virtue of the power and authority given a bankruptcy trustee under the laws of the United States of America, for the consideration hereinafter stated, does hereby convey to **Big Blue Capital, LLC,** herein called **"Grantee,"** whose current address is 4040 SW Douglas Way, Lake Oswego, Oregon 97035 ("Property"), and unto Grantee's successors and assigns, all of the interest, if any, vested in the subject property described herein at the time of the filing of the above referenced bankruptcy case, and which passed to the Bankruptcy Estate by operation of law and became subject to administration of the Trustee, together with all after acquired title of the Bankruptcy Estate, if any, all tenements, hereditaments, appurtances thereunto belonging, or in any way appertaining, situated in the County of Clackamas, State of Oregon, described as follows:  real property located at **87287 Government Camp Loop, Government Camp,** Oregon 97028, and **legally described on the attached Exhibit A.**

The Trustee's power and authority to dispose of such property of the Bankruptcy Estate originates in 11 U.S.C. § 363, and this transfer is made following notice to "interested persons" and an opportunity for hearing pursuant to such law.

The consideration for this transfer is $10,000, subject to any and all existing liens and encumbrances existing upon the Property.

Grantor makes this conveyance without any warranties express or implied.  This conveyance and release is intended to transfer all of the Bankruptcy Estate's interest, if any, in the subject property described herein, to the Grantee, in its existing condition,

Page 1 – TRUSTEE'S DEED
D:\Documents\Trustee Docs\correspondence work in process\Burton  Trustee's Deed - revised.DOC

"AS IS," without any warranties express or implied. Grantee's recording of this deed indicates Grantee's acceptance of this conveyance and release upon that basis.

Grantor covenants that this deed is to be absolute in effect as pertains to the Bankruptcy Estate and conveys whatever right, title and interest the Bankruptcy Estate may have in the described property. This conveyance and release is not intended to operate as a mortgage, trust deed or security of any kind.

BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009.

IN WITNESS WHEREOF, Grantor has executed this deed this 14th day of November, 2012.

_____
Peter C. McKittrick, Chapter 7 Trustee for the Bankruptcy Estate of Mary Louise Burton, Case No. 12-34768-rld7.

STATE OF OREGON    )
                      ) ss.
County of Washington    )

This instrument was acknowledged before me on the 14th day of November, 2012 by Peter C. McKittrick, Chapter 7 Trustee on behalf of the Bankruptcy Estate of Mary Louise Burton, Bankruptcy Case No.12-34768-rld7 currently pending in the United States Bankruptcy Court for the District of Oregon.

OFFICIAL SEAL
CYNTHIA A MORRIS
NOTARY PUBLIC - OREGON
COMMISSION NO. 449417
MY COMMISSION EXPIRES JUNE 05, 2014

_____
NOTARY PUBLIC in and for Oregon
My Commission Expires: 6-5-2014

Page 2 – TRUSTEE'S DEED
D:\Documents\Trustee Docs\correspondence work in process\Burton Trustee's Deed - revised.DOC

# EXHIBIT A

**LEGAL DESCRIPTION FOR PROPERTY ADDRESS:**
**87287 E GOVERNMENT CAMP LOOP, GOVERNMENT CAMP, OR 97028**

The West one-half of Lot 18, IDA DARR SUBDIVISION, as cut off by
a line drawn along the extension of the boundary between Lots 13
and 14 of said IDA DARR SUBDIVISION, Clackamas County, Oregon

## Resolution to Effect a Corporate Name Change and
## Transfer the Property to a Separate Entity

WHEREAS, it is considered advisable for Big Blue Capital, LLC, Oregon Registry Number 827230-90 and Big Blue Capital II, LLC, Oregon Registry Number 947293-90, which operates under the assumed business name of Great Blue Lodge, Oregon Registry 895866-98 to legally change the corporate names from Big Blue Capital, LLC to RenX Group, LLC and Big Blue Capital II, LLC to RenX Group II, LLC. This name change better reflects the business purpose of renovating properties and effectively removes any negative publicity that was begging to rear with having a very bold name.

WHEREAS, it is considered advisable for RenX Group, LLC fka Big Blue Capital, LLC to transfer a 100% interest in 87287 East Government Camp Loop, Government Camp, OR 97028 to RenX Group, LLC fka Big Blue Capital, LLC to RenX Group II, LLC fka Big Blue Capital II, LLC, which operates under the assumed business name of Great Blue Lodge. This transfer includes 100% of the property and 100% of the business interest, that is currently being leased out to Vacasa Vacation Rentals. This transfer is prudent as a going business concern to eliminate the risk associated with owning a valuable asset within a pool of other distressed assets. It also simplifies accounting and transparency to the investors and partners of RenX Group II, LLC fka Big Blue Capital II, LLC.

WHEREAS, it is considered advisable from corporate counsel to not record the deed of this transfer into RenX Group II, LLC until the closing of escrow upon the clearing of the liens. Copy of the Trustee's Deed recorded in Clackamas County, OR, 2012-079781 is attached as Exhibit A.

RESOLVED, that members who hold a majority interest, or quorum, execute the necessary agreements and paperwork to expedite the transfer of the property and business assets of 87287 East Government Camp Loop, Government Camp, OR 97028 from RenX Group, LLC fka Big Blue Capital, LLC to RenX Group II, LLC fka Big Blue Capital II, LLC in strict accordance with this resolution.

RESOLVED FURTHER, that members who hold a majority interest, or quorum, be authorized to execute such further documents and undertake such other acts as are reasonably required to carry out and consummate said transfer of the property and assets.

RESOLVED, that that members who hold a majority interest, or quorum, under advice from legal counsel, shall not record the transfer of the original deed in the name of Big Blue Capital, LLC into RenX Group II, LLC so as not to interfere or negatively impact the litigation that is currently in progress. This decision is deemed to be in the best interest of the members at time.

The undersigned hereby certifies that hold a majority of interest in both RenX Group, LLC fka Big Blue Capital, LLC to RenX Group II, LLC fka Big Blue Capital II, LLC , limited liability companies duly formed pursuant to the laws of the state of Oregon and that the foregoing is a true record of a resolution duly adopted at a meeting of a majority interest, or quorum, and that said meeting was held in accordance with state law and the Bylaws of the above-named Corporation on ,and that said resolution is now in full force and effect without modification or rescission.

IN WITNESS WHEREOF, the following majority of interest of members do hereby sign this resolution on November 1st 2013.

RenX Group, LLC fka Big Blue Capital, LLC

Tracey Baron, Managing Member RenX Group,
LLC an Ohio Limited Liability Company

Jeff Long, Member RenX Group, LLC an Oregon
Limited Liability Company

RenX Group II, LLC fka Big Blue Capital II, LLC

Tracey Baron, Managing Member RenX Group,
LLC an Ohio Limited Liability Company

Jeff Long, Member RenX Group II, LLC an
Oregon Limited Liability Company

Xianghua Pan, Member RenX Group II, LLC an
Oregon Limited Liability Company

Sales Document

Clackamas County Official Records
Sherry Hall, County Clerk

**2016-014355**

After recording return to and
Send all future tax statements to:
RenX Group II, LLC
308 SW 1st Ave #325,
Portland, OR 97204
TRACEY BARON

**$53.00**

03/01/2016 02:47:08 PM

D-D          Cnt=1 Stn=54 COUNTER2
$5.00 $16.00 $22.00 $10.00

**BARGAIN AND SALE DEED**

**RenX Group, LLC fka Big Blue Capital, LLC**, Grantor, conveys to **RenX Group II, LLC** an Oregon limited liability company, Grantee, all of Grantor's rights, title, interest, claims and actions against third parties in the following described real property at **87287 E. Government Camp Loop, Government Camp, OR 97028** and legally described as the following:

> The West one-half of Lot 18, IDA DARR SUBDIVISION, as cut off by a line drawn along the extension of the boundary between Lots 13 and 14 of said IDA DARR SUBDIVISION, Clackamas County, Oregon.

SUBJECT TO all of the encumbrances, covenants, conditions, restrictions, reservations, set back lines, powers of special districts, and easements of record, if any. The true and actual consideration for this conveyance is: **Ten Dollars and Zero Cents ($10.00)**.

BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

Dated this 25th day of February, 2016.

Tracey Baron, Manager
RenX Group, LLC and RenX Group II, LLC

STATE OF OREGON, County of Clackamas ) ss.

On February 25, 2016, the above Tracey Baron, Grantor and Manager of RenX Group, LLC fka Big Blue Capital, LLC personally appeared before me and acknowledged this instrument to be his voluntary act and deed.

OFFICIAL STAMP
RICK DEAN PHILLIPS
NOTARY PUBLIC-OREGON
COMMISSION NO. 945894
MY COMMISSION EXPIRES DECEMBER 30, 2019

Notary Public for Oregon

Customer Name : Greg Dorros
Customer Company Name : 503 Properties Inc.
Prepared On : 05/26/2017
© 2017 CoreLogic. All rights reserved

# EXHIBIT 5

CLACKAMAS CONFORMED COPY
FILED

FEB 11 2014

TRIAL COURT ADMINISTRATION
BY: _____

1

2

3

4

5       IN THE CIRCUIT COURT OF THE STATE OF OREGON
6           IN AND FOR THE COUNTY OF CLACKAMAS

7   DEUTSCHE BANK NATIONAL TRUST
    COMPANY, AS TRUSTEE FOR WAMU ASSET          Case No. CV12090655
8   BACKED CERTIFICATES, WAMU SERIES
    2007-HE1 TRUST,
9
                    Plaintiff,                   GENERAL JUDGMENT OF
10                                                FORECLOSURE

11          vs.

12  JOHN BURTON; MARY LOU BURTON;
    FALCON'S CREST LODGE AT GOVERNMENT
13  CAMP, LLC; ROBERT H. JOHNSON; MELODY
    W. JOHNSON; JEFFREY D. KANTOR; JIMMY
14  DRAKOS, OTHER PERSONS OR PARTIES,
    including OCCUPANTS, UNKNOWN
15  CLAIMING ANY RIGHT, TITLE, LIEN, OR
    INTEREST IN THE PROPERTY DESCRIBED IN
16  THE COMPLAINT HEREIN,

17                  Defendants.
    _____

18
19          Default having been entered against Defendant(s), John Burton a/k/a Jr. John Burton,

20  Mary Lou Burton a/k/a Mary Louise Burton, Falcon's Crest Lodge at Government Camp, LLC,

21  Robert H. Johnson, Melody W. Johnson, Jeffrey D. Kantor and Jimmy Drakos and Defendant(s),

22  Other Persons Or Parties, Including Occupants, Unknown Claiming Any Right, Title, Lien, Or

23  Interest In The Property Described in the complaint herein and Peter C. McKittrick, having been

24  dismissed:

25  1 - GENERAL JUDGMENT OF FORECLOSURE
26  ██████████████                          *SHAPIRO & SUTHERLAND, LLC*
                                      1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
27                                         Telephone (360)260-2253 (800)970-5647
                                                   Fax (360)260-2285
28                                              ksutherland@logs.com

It is hereby

ORDERED AND ADJUDGED:

1. The real property to which this judgment relates (hereafter the "Property") is situated in Clackamas County, Oregon is commonly known as 87287 E Government Camp Loop, Government Camp, OR 97028 and is legally described as follows:

> The West One-Half of Lot 18, IDA DARR SUBDIVISION, as cut off by a line drawn along the extension of the boundary between Lots 13 and 14 of said IDA DARR SUBDIVISION, Clackamas County, Oregon

2. The Deed of Trust executed and delivered by Defendant, John Burton and Mary Lou Burton, as tenants by the entirety ("Borrower") on or about December 7, 2006 and recorded on December 11, 2006 as Recorder's Fee No. 2006-113655 in the official records of Clackamas County, Oregon, is a valid and perfected lien against all of the Property for the amount of Plaintiff's judgment as provided herein.

3. The Plaintiff is the holder of the original note dated December 7, 2006 and made by John Burton and Mary Lou Burton in the amount of $855,000.00. A copy of the Note was attached to the complaint as Exhibit. Plaintiff is the holder of the Note and the beneficial interest in the Deed of Trust (together the "Loan").

4. The interest of each of the Defendant(s) subject to this Judgment and any successor in interest in the Property is foreclosed and terminated excepting only any statutory right of redemption as provided by Oregon law.

//

//

2 - GENERAL JUDGMENT OF FORECLOSURE

████████████

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

5. The lien of the Plaintiff is superior to any interest, lien, or claim of the remaining Defendants and shall remain in effect until issuance of a Sheriff's Deed. In it's sole discretion, Plaintiff may move to rescind the foreclosure judgment and to reinstate the Loan prior to the Sheriff's sale, returning the parties to their prejudgment interests and priorities.

6. The Defendant(s) are not entitled to a homestead exception as against Plaintiff's judgment.

7. All of the rights, title and interest that Borrower(s) had as of the date of the Deed of Trust or thereafter acquired in the subject Property, is hereby ordered to be sold by the Clackamas County Sheriff's Office in accordance with the process for sale upon execution, and the proceeds of sale shall be applied; first to the costs of sale; second to satisfaction of the amounts awarded Plaintiff herein; with the surplus, if any, to the Defendants in the priority as their interest may appear or to the clerk of the court to be distributed to such party of parties as may establish their right thereto.

8. Plaintiff or any junior lienholders may become purchaser at the sale of the Property.

9. The purchaser at the sale is entitled to exclusive and immediate possession of the Property from and after the date of the sale and is entitled to such remedies as are available at law or in equity to secure possession.

10. The purchaser at the sale may apply to the Court for a writ of assistance if any Defendant or any person holding possession under or through such Defendant(s) shall refuse to surrender possession to the purchaser immediately on the purchaser's demand for possession.

//

//

3 - GENERAL JUDGMENT OF FORECLOSURE

SHAPIRO & SUTHERLAND, LLC
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

11. Under the terms of the Loan there is now due and owing to Plaintiff the following amounts:

| Principal | | | $841,430.65 | |
|---|---|---|---|---|
| Prejudgment interest at 8.7% through October 30, 2013 (accruing thereafter until entry of judgment at $200.56/per diem) | | | | $341,620.72 |
| Late Charges | | | $2,008.74 | |
| Other Costs and fees (recoverable) | | | 30,756.23 | |
| | Property Tax | $27,750.66 | | |
| | Hazard Insurance | $10,911.00 | | |
| | Appraisal/BPO | $188.00 | | |
| | Property Inspections | $326.55 | | |
| | Property Preservation | $360.00 | | |
| | Escrow Credits | $-1,716.79 | | |
| | Suspense Balance | ($7,063.19) | | |
| | | Subtotal | | $874,195.62 |
| Total plus Prejudgment Interest | | | | $1,215,816.34 |

12. Attorney Fees and Costs are awarded to Plaintiff as follows:

| Costs | | | | $3,902.20 |
|---|---|---|---|---|
| | Title Search Cost | | $1,863.00 | |
| | Filing Fee | | $505.00 | |
| | Lis Pendens Recording Fee | | $48.00 | |
| | Service by Publication | | $451.20 | |
| | Service Costs | | $760.00 | |
| | Prevailing Party Fee | | $275.00 | |
| Attorney fees | | | | $2,050.00 |
| Total | | | | $5,952.20 |

13. Post judgment interest on all amounts shall accrue from the date of judgment at the legal rate of 9% per annum pursuant to ORS 82.010.

4 - GENERAL JUDGMENT OF FORECLOSURE

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

14. This judgment shall not create a personal lien or liability against Borrower except as is customary or necessary to execute on such judgment and for purposes of redemption. In no event should it be construed as establishing personal liability for any persons whose debt has been extinguished in bankruptcy or by an In Rem order granting relief from stay, but only to foreclose the deed of trust mortgage. In the event the proceeds of sale are insufficient to pay the amounts due to Plaintiff, no general execution shall be issued and Plaintiff shall not be entitled to any further judgment, including a judgment for deficiency.

15. Execution may issue against the subject property for the aggregate amount found due Plaintiff herein as detailed in Paragraphs 11 through 13. (together "Amounts Due"). Plaintiff may credit bid up to the Amounts Due plus such additional amounts as provided by ORS 18.936 or other applicable law.

16. If before sale such amount, including sheriff's fees for the execution, is tendered to the court and paid to the clerk, the execution, if issued, shall be recalled and the effect of the judgment as to the amounts due shall be terminated.

17. The Clerk of the Court is hereby ordered to issue a Writ of Execution in Foreclosure for the sale of the Property. Plaintiff may credit bid the amounts determined in Paragraphs 11 through 13 plus such additional amounts as provided in Paragraph 16 for purposes of ORS 18.936.

18. This Court shall retain jurisdiction to enter such additional order, judgment or decree necessary to enforce this judgment, the writ of execution or for the purchaser at the foreclosure sale to obtain possession.

5 - GENERAL JUDGMENT OF FORECLOSURE

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

**MONEY AWARD\***

| | | |
|---|---|---|
| a. | Judgment Creditor: | Plaintiff, Deutsche Bank National Trust Company, as Trustee for WaMu Asset Backed Certificates, WaMu Series 2007-HE1 Trust |
| | Address for purpose of this judgment only: | c/o Shapiro & Sutherland, LLC 1499 SE Tech Center Place, Suite 255 Vancouver, WA 98683 (360)260-2253 |
| | Attorney for Judgment Creditor: | Shapiro & Sutherland, LLC 1499 SE Tech Center Place, Suite 255 Vancouver, WA 98683 (360)260-2253 |
| b. | Judgment Debtor**: | John Burton and Mary Lou Burton 87287 East Government Camp Loop, Government Camp, OR 97028 |
| | Year of date of birth: | n/a |
| | Social Security number: | n/a |
| | Driver's license State and Number: | Last four digits: n/a |
| | Attorney for Judgment Debtor is: | none |
| c. | The name of any person or public body, other than the Judgment Creditor's Attorney, who is entitled to any portion of the judgment: | none |
| d. | The amount of the judgment exclusive of amounts included in subsection (e) to( h) is: | $874,195.62 |
| e. | Prejudgment interest: | at the rate of 8.7% through October 30, 2013 totaling, $341,620.72 and thereafter at the of $200.56 per diem until entry of judgment |
| f. | Post-judgment interest: | on all amounts awarded will accrue at the rate of 9.0% per annum pursuant to ORS 82.010 from the date of entry of judgment until the entire amount owing is paid |
| g. | monetary obligations that are payable on a periodic basis, any accrued arrearages, required further payments per period and payment dates | |

6 - GENERAL JUDGMENT OF FORECLOSURE

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

| h. | Costs and disbursements | $3,902.20 |
|---|---|---|
| | Attorney fees in the amount of: | $2,050.00 |

*This section is provided to comply with ORS 18.042 and/or ORS 88.070 and is not intended to establish personal liability if such personal liability has been extinguished by a Bankruptcy discharge or by an order granting relief from stay In Rem .

**For execution in rem on the subject Property only.  Not intended to be a lien on any other property of the Judgment Debtor.

Dated this ___6___ day of _____PW._____, ~~2013~~ 2014

_____
CIRCUIT COURT JUDGE

Submitted by:

Attorneys for Plaintiff,
SHAPIRO & SUTHERLAND, LLC

By:_____
[X] James A. Craft #090146 [jcraft@logs.com]
[ ] Kelly D. Sutherland #87357 [ksutherland@logs.com]
[ ] Cara J. Richter #094855 [crichter@logs.com]
[ ] Holger Uhl #950143 [huhl@logs.com]
[ ] Kara Cogswell #113566 [kcogswell@logs.com]
[ ] Mary Hannon # 131074 [mhannon@logs.com]
1499 SE Tech Center Place, Suite 255
Vancouver, WA 98683
(360)260-2253; Fax (360)260-2285

7 - GENERAL JUDGMENT OF FORECLOSURE

SHAPIRO & SUTHERLAND, LLC
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

EXHIBIT 6

Document Images

Sales Document

After recording return to and
Send all future tax statements to:
RenX Group II, LLC
308 SW 1st Ave #325,
Portland, OR 97204
TRACEY BARON

Clackamas County Official Records
Sherry Hall, County Clerk

**2016-014355**

**$53.00**

03/01/2016 02:47:08 PM

D-D          Cnt=1 Stn=54 COUNTER2
$5.00 $16.00 $22.00 $10.00

**BARGAIN AND SALE DEED**

**RenX Group, LLC fka Big Blue Capital, LLC**, Grantor, conveys to **RenX Group II, LLC** an Oregon limited liability company, Grantee, all of Grantor's rights, title, interest, claims and actions against third parties in the following described real property at **87287 E. Government Camp Loop, Government Camp, OR 97028** and legally described as the following:

> **The West one-half of Lot 18, IDA DARR SUBDIVISION, as cut off by a line drawn along the extension of the boundary between Lots 13 and 14 of said IDA DARR SUBDIVISION, Clackamas County, Oregon.**

SUBJECT TO all of the encumbrances, covenants, conditions, restrictions, reservations, set back lines, powers of special districts, and easements of record, if any. The true and actual consideration for this conveyance is: **Ten Dollars and Zero Cents ($10.00).**

BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

Dated this 25th day of February, 2016.

Tracey Baron, Manager
RenX Group, LLC and RenX Group II, LLC

STATE OF OREGON, County of Clackamas ) ss.

On February 25, 2016, the above Tracey Baron, Grantor and Manager of RenX Group, LLC fka Big Blue Capital, LLC personally appeared before me and acknowledged this instrument to be his voluntary act and deed.

OFFICIAL STAMP
**RICK DEAN PHILLIPS**
NOTARY PUBLIC-OREGON
COMMISSION NO. 945894
MY COMMISSION EXPIRES DECEMBER 30, 2019

Notary Public for Oregon

Customer Name : Greg Dorros
Customer Company Name : 503 Properties Inc.
Prepared On : 05/26/2017
© 2017 CoreLogic. All rights reserved

# EXHIBIT 7

**RECORDING COVER SHEET** PER ORS 205.234
THIS COVER SHEET HAS BEEN PREPARED BY THE PERSON
PRESENTING THE ATTACHED INSTRUMENT FOR RECORDING.
ANY ERRORS IN THIS COVER SHEET DOES NOT AFFECT THE
TRANSACTION(S) CONTAINED IN THE INSTRUMENT ITSELF.

Clackamas County Official Records
Sherry Hall, County Clerk

**2017-038075**

06/07/2017 11:03:09 AM

CLR-WEX        Cnt=1 Stn=0 KARLYN
$55.00 $16.00

$71.00

**AFTER RECORDING RETURN TO:**
McCarthy Holthus LLP
920 SW 3rd Ave. 1st Floor
Portland, OR 97204

**M&H File #:  OR-15-676996-JUD**

**1.   TITLE OF THE TRANSACTION (ORS 205.234a)**
Corrected Writ of Execution In Foreclosure

**2.  Grantor(s) (2nd Party/Defendant) and Address:** (ORS 205.160)

Mary Lou Burton, John Burton

87287 E Government Camp Loop, Government Camp, OR 97028

**3. Grantee(s) (1st Party/Plaintiff) and Address: (ORS 205.1251a and 205.160)**
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR REGISTERED HOLDERS OF WAMU ASSET-BACKED CERTIFICATES WAMU SERIES 2007-HE1 TRUST

3217 S. Decker Lake Dr., Salt Lake City, UT 84119

**4. Trustor (s) : (ORS 205.234)**
Mary Lou Burton
87287 E Government Camp Loop
Government Camp, OR 97028

John Burton
87287 E Government Camp Loop
Government Camp, OR 97028

**5. Other Parties (Named Defendants)**

Big Blue Capital, LLC; Melody W. Johnson; Robert H. Johnson ; Jeffrey D. Kantor; Falcon's Crest Lodge at

Government Camp LLC; Jimmy Drakos; Other Persons or Parties, including Occupants, Unknown Claiming Any

Right, Title, Lien, Or Interest In The Property Described In The Complaint Herein

**6. TRUE AND ACTUAL CONSIDERATION PAID (ORS 93.030)**        $  0.00

**7. SEND TAX STATEMENTS TO:**
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR REGISTERED HOLDERS OF WAMU ASSET-BACKED CERTIFICATES WAMU SERIES 2007-HE1 TRUST,  3217 S. Decker Lake Dr., Salt Lake City, UT 84119

**8. If this instrument is being Re-Recorded, complete the following statement: (ORS 205.244)**

**Being Re-Recorded to correct**

**Previously recorded as Document No.**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF CLACKAMAS

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR WAMU ASSET-BACKED CERTIFICATES, WAMU SERIES 2007-HE1 TRUST,<br><br>       Plaintiff,<br><br>  vs.<br><br>JOHN BURTON; MARY LOU BURTON; FALCON'S CREST LODGE AT GOVERNMENT CAMP LLC; ROBERT H. JOHNSON; MELODY W. JOHNSON; JEFFREY D. KANTOR; JIMMY DRAKOS; OTHER PERSONS OR PARTIES, including OCCUPANTS, UNKNOWN CLAIMING ANY RIGHT, TITLE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT HEREIN,<br><br>      Defendants. | Case No.: CV12090655<br><br>CORRECTED WRIT OF EXECUTION IN FORECLOSURE |

**TO THE CLACKAMAS COUNTY SHERIFF**

    A Judgment of Foreclosure was entered and docketed in this case on 2/12/2014. A true copy of the Judgment is attached hereto. The Judgment was entered in favor of the Judgment Creditor:

    DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR WAMU ASSET-BACKED CERTIFICATES, WAMU SERIES 2007-HE1 TRUST
    Submitted By:
    Jeremy Clifford
    Attorney for Plaintiff
    McCarthy & Holthus, LLP
    920 SW 3rd Ave, 1st Floor
    Portland, OR 97204

CORRECTED WRIT OF EXECUTION IN FORECLOSURE - 1
OR-15-676996-JUD

MCCARTHY & HOLTHUS, LLP
920 SW 3RD AVE, 1ST FLOOR
PORTLAND, OR 97204
PHONE: 855-809-3977
FAX NO: (971) 201-3202

Case 17-33139-tmb11     Doc 37     Filed 10/13/17

With the amount of debt secured by the foreclosed lien being **$1,221,768.54**, plus post judgment

interest at the statutory rate of 9.0% per annum from 2/12/2014 to 4/10/2017 in the amount of

**$347,350.47**, and continuing with a per diem of **$301.26**, currently totaling **$1,569,119.01.**

    **NOW, THEREFORE, IN THE NAME OF THE STATE OF OREGON,** you are

hereby commanded to sell, in the manner prescribed by law for the sale of real property on

execution (subject to redemption of 180 days), all of the interest that the Defendant had on or

about 12/7/2006, the date of the Deed of Trust, and also the interest that the Defendant had

thereafter, in the real property described in the attached *Exhibit 1*, having APN# 00989096 and

commonly known as: 87287 E Government Camp Loop, Government Camp, OR 97028.

    Sale of the property is to satisfy the sum listed above, plus the costs incurred in

performing this Writ. Pursuant to ORS 18.872, you are authorized to continue execution under

the writ and delay making a return on the writ to no later than 150 days from receipt of the writ.

**DATED:** 20th day of _April_ , 2017.

COURT CLERK HAS NOT VERIFIED FIGURES IN THIS WRIT.
IF YOU HAVE ANY QUESTIONS REGARDING THIS WRIT,
PLEASE CONTACT YOUR LEGAL COUNSEL, THE ISSUING
ATTORNEY OR THE ISSUING COMPANY. DEBTOR MAY CONTEST
THIS WRIT BY FILING A CLAIM OF EXEMPTION.

Title _JSS 4_

By: _____

*CIRCUIT COURT COUNTY OF CLACKAMAS STATE OF OREGON*

Dated:

*Court Administrator relies on the information provided by the person seeking issuance of this writ of execution and is not liable for any errors or omissions in the information*

Submitted By:

Jeremy Clifford, OSB No. 142987
920 SW 3rd Ave, 1st Floor
Portland, OR 97204
Phone: (971) 201-3200
Fax: (971) 201-3202
jclifford@mccarthyholthus.com
Of Attorneys for Plaintiff

Certified True Copy Of The Original
Dated This 20 Day Of _APR_ , 20_17_
Trial Court Administrator
By: _____

CORRECTED WRIT OF EXECUTION IN FORECLOSURE - 2
OR-15-676996-JUD

MCCARTHY & HOLTHUS, LLP
920 SW 3RD AVE, 1ST FLOOR
PORTLAND, OR 97204
PHONE: 855-809-3977
FAX NO: (971) 201-3202

Case 17-33139-tmb11    Doc 37    Filed 10/13/17

# Exhibit 1

THE WEST ONE-HALF OF LOT 18, IDA DARR SUBDIVISION, AS CUT OFF BY A LINE DRAWN ALONG THE EXTENSION OF THE BOUNDARY BETWEEN LOTS 13 AND 14 OF SAID IDA DARR SUBDIVISION, CLACKAMAS COUNTY, OREGON.

Exhibit 1
Page 1 of 1



1
2
3

CLACKAMAS CONFORMED COPY
FILED

FEB 11 2014

TRIAL COURT ADMINISTRATION
BY: _____

4

5      IN THE CIRCUIT COURT OF THE STATE OF OREGON
6          IN AND FOR THE COUNTY OF CLACKAMAS

7   DEUTSCHE BANK NATIONAL TRUST
    COMPANY, AS TRUSTEE FOR WAMU ASSET          Case No. CV12090655
8   BACKED CERTIFICATES, WAMU SERIES
    2007-HE1 TRUST,
9
                Plaintiff,                       GENERAL JUDGMENT OF
10                                               FORECLOSURE

11      vs.

12  JOHN BURTON; MARY LOU BURTON;
    FALCON'S CREST LODGE AT GOVERNMENT
13  CAMP, LLC; ROBERT H. JOHNSON; MELODY
    W. JOHNSON; JEFFREY D. KANTOR; JIMMY
14  DRAKOS, OTHER PERSONS OR PARTIES,
    including OCCUPANTS, UNKNOWN
15  CLAIMING ANY RIGHT, TITLE, LIEN, OR
    INTEREST IN THE PROPERTY DESCRIBED IN
16  THE COMPLAINT HEREIN,

17              Defendants.

18
19      Default having been entered against Defendant(s), John Burton a/k/a Jr. John Burton,

20  Mary Lou Burton a/k/a Mary Louise Burton, Falcon's Crest Lodge at Government Camp, LLC,

21  Robert H. Johnson, Melody W. Johnson, Jeffrey D. Kantor and Jimmy Drakos and Defendant(s),

22  Other Persons Or Parties, Including Occupants, Unknown Claiming Any Right, Title, Lien, Or

23  Interest In The Property Described in the complaint herein and Peter C. McKittrick, having been

24  dismissed:

25
    1 - GENERAL JUDGMENT OF FORECLOSURE
26                                                        *SHAPIRO & SUTHERLAND, LLC*
                                                  1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
27                                                       Telephone (360)260-2253 (800)970-5647
                                                                      Fax (360)260-2285
28                                                                   ksutherland@logs.com

It is hereby

ORDERED AND ADJUDGED:

1. The real property to which this judgment relates (hereafter the "Property") is situated in Clackamas County, Oregon is commonly known as 87287 E Government Camp Loop, Government Camp, OR 97028 and is legally described as follows:

> The West One-Half of Lot 18, IDA DARR SUBDIVISION, as cut off by a line drawn along the extension of the boundary between Lots 13 and 14 of said IDA DARR SUBDIVISION, Clackamas County, Oregon

2. The Deed of Trust executed and delivered by Defendant, John Burton and Mary Lou Burton, as tenants by the entirety ("Borrower") on or about December 7, 2006 and recorded on December 11, 2006 as Recorder's Fee No. 2006-113655 in the official records of Clackamas County, Oregon, is a valid and perfected lien against all of the Property for the amount of Plaintiff's judgment as provided herein.

3. The Plaintiff is the holder of the original note dated December 7, 2006 and made by John Burton and Mary Lou Burton in the amount of $855,000.00. A copy of the Note was attached to the complaint as Exhibit. Plaintiff is the holder of the Note and the beneficial interest in the Deed of Trust (together the "Loan").

4. The interest of each of the Defendant(s) subject to this Judgment and any successor in interest in the Property is foreclosed and terminated excepting only any statutory right of redemption as provided by Oregon law.

//

//

2 - GENERAL JUDGMENT OF FORECLOSURE

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

5. The lien of the Plaintiff is superior to any interest, lien, or claim of the remaining Defendants and shall remain in effect until issuance of a Sheriff's Deed. In it's sole discretion, Plaintiff may move to rescind the foreclosure judgment and to reinstate the Loan prior to the Sheriff's sale, returning the parties to their prejudgment interests and priorities.

6. The Defendant(s) are not entitled to a homestead exception as against Plaintiff's judgment.

7. All of the rights, title and interest that Borrower(s) had as of the date of the Deed of Trust or thereafter acquired in the subject Property, is hereby ordered to be sold by the Clackamas County Sheriff's Office in accordance with the process for sale upon execution, and the proceeds of sale shall be applied; first to the costs of sale; second to satisfaction of the amounts awarded Plaintiff herein; with the surplus, if any, to the Defendants in the priority as their interest may appear or to the clerk of the court to be distributed to such party of parties as may establish their right thereto.

8. Plaintiff or any junior lienholders may become purchaser at the sale of the Property.

9. The purchaser at the sale is entitled to exclusive and immediate possession of the Property from and after the date of the sale and is entitled to such remedies as are available at law or in equity to secure possession.

10. The purchaser at the sale may apply to the Court for a writ of assistance if any Defendant or any person holding possession under or through such Defendant(s) shall refuse to surrender possession to the purchaser immediately on the purchaser's demand for possession.

//

//

3 - GENERAL JUDGMENT OF FORECLOSURE

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

11. Under the terms of the Loan there is now due and owing to Plaintiff the following amounts:

| | | | |
|---|---|---|---|
| Principal | | $841,430.65 | |
| Prejudgment interest at 8.7% through October 30, 2013 (accruing thereafter until entry of judgment at $200.56/per diem) | | | $341,620.72 |
| Late Charges | | $2,008.74 | |
| Other Costs and fees (recoverable) | | 30,756.23 | |
| | Property Tax | $27,750.66 | |
| | Hazard Insurance | $10,911.00 | |
| | Appraisal/BPO | $188.00 | |
| | Property Inspections | $326.55 | |
| | Property Preservation | $360.00 | |
| | Escrow Credits | $-1,716.79 | |
| | Suspense Balance | ($7,063.19) | |
| | Subtotal | | $874,195.62 |
| Total plus Prejudgment Interest | | | $1,215,816.34 |

12. Attorney Fees and Costs are awarded to Plaintiff as follows:

| | | | |
|---|---|---|---|
| Costs | | | $3,902.20 |
| | Title Search Cost | $1,863.00 | |
| | Filing Fee | $505.00 | |
| | Lis Pendens Recording Fee | $48.00 | |
| | Service by Publication | $451.20 | |
| | Service Costs | $760.00 | |
| | Prevailing Party Fee | $275.00 | |
| Attorney fees | | | $2,050.00 |
| Total | | | $5,952.20 |

13. Post judgment interest on all amounts shall accrue from the date of judgment at the legal rate of 9% per annum pursuant to ORS 82.010.

4 - GENERAL JUDGMENT OF FORECLOSURE

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

14. This judgment shall not create a personal lien or liability against Borrower except as is customary or necessary to execute on such judgment and for purposes of redemption. In no event should it be construed as establishing personal liability for any persons whose debt has been extinguished in bankruptcy or by an In Rem order granting relief from stay, but only to foreclose the deed of trust mortgage. In the event the proceeds of sale are insufficient to pay the amounts due to Plaintiff, no general execution shall be issued and Plaintiff shall not be entitled to any further judgment, including a judgment for deficiency.

15. Execution may issue against the subject property for the aggregate amount found due Plaintiff herein as detailed in Paragraphs 11 through 13. (together "Amounts Due"). Plaintiff may credit bid up to the Amounts Due plus such additional amounts as provided by ORS 18.936 or other applicable law.

16. If before sale such amount, including sheriff's fees for the execution, is tendered to the court and paid to the clerk, the execution, if issued, shall be recalled and the effect of the judgment as to the amounts due shall be terminated.

17. The Clerk of the Court is hereby ordered to issue a Writ of Execution in Foreclosure for the sale of the Property. Plaintiff may credit bid the amounts determined in Paragraphs 11 through 13 plus such additional amounts as provided in Paragraph 16 for purposes of ORS 18.936.

18. This Court shall retain jurisdiction to enter such additional order, judgment or decree necessary to enforce this judgment, the writ of execution or for the purchaser at the foreclosure sale to obtain possession.

5 - GENERAL JUDGMENT OF FORECLOSURE

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

## MONEY AWARD*

| | | |
|---|---|---|
| a. | Judgment Creditor: | Plaintiff, Deutsche Bank National Trust Company, as Trustee for WaMu Asset Backed Certificates, WaMu Series 2007-HE1 Trust |
| | Address for purpose of this judgment only: | c/o Shapiro & Sutherland, LLC 1499 SE Tech Center Place, Suite 255 Vancouver, WA 98683 (360)260-2253 |
| | Attorney for Judgment Creditor: | Shapiro & Sutherland, LLC 1499 SE Tech Center Place, Suite 255 Vancouver, WA 98683 (360)260-2253 |
| b. | Judgment Debtor**: | John Burton and Mary Lou Burton 87287 East Government Camp Loop, Government Camp, OR 97028 |
| | Year of date of birth: | n/a |
| | Social Security number: | n/a |
| | Driver's license State and Number: | Last four digits: n/a |
| | Attorney for Judgment Debtor is: | none |
| c. | The name of any person or public body, other than the Judgment Creditor's Attorney, who is entitled to any portion of the judgment: | none |
| d. | The amount of the judgment exclusive of amounts included in subsection (e) to( h) is: | $874,195.62 |
| e. | Prejudgment interest: | at the rate of 8.7% through October 30, 2013 totaling, $341,620.72 and thereafter at the of $200.56 per diem until entry of judgment |
| f. | Post-judgment interest: | on all amounts awarded will accrue at the rate of 9.0% per annum pursuant to ORS 82.010 from the date of entry of judgment until the entire amount owing is paid |
| g. | monetary obligations that are payable on a periodic basis, any accrued arrearages, required further payments per period and payment dates | |

6- GENERAL JUDGMENT OF FORECLOSURE

| h. | Costs and disbursements | $3,902.20 |
| | Attorney fees in the amount of: | $2,050.00 |

\*This section is provided to comply with ORS 18.042 and/or ORS 88.070 and is not intended to establish personal liability if such personal liability has been extinguished by a Bankruptcy discharge or by an order granting relief from stay In Rem.

\*\*For execution in rem on the subject Property only. Not intended to be a lien on any other property of the Judgment Debtor.

Dated this ___6___ day of ___Feb.___, 2013 2014

_Ig Tait_

CIRCUIT COURT JUDGE

Submitted by:

Attorneys for Plaintiff,
SHAPIRO & SUTHERLAND, LLC

By: _____

[X] James A. Craft #090146 [jcraft@logs.com]
[ ] Kelly D. Sutherland #87357 [ksutherland@logs.com]
[ ] Cara J. Richter #094855 [crichter@logs.com]
[ ] Holger Uhl #950143 [huhl@logs.com]
[ ] Kara Cogswell #113566 [kcogswell@logs.com]
[ ] Mary Hannon # 131074 [mhannon@logs.com]
1499 SE Tech Center Place, Suite 255
Vancouver, WA 98683
(360)260-2253; Fax (360)260-2285

7 - GENERAL JUDGMENT OF FORECLOSURE

SHAPIRO & SUTHERLAND, LLC
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253 (800)970-5647
Fax (360)260-2285
ksutherland@logs.com

# EXHIBIT 8

# IN THE CIRCUIT COURT OF THE STATE OF OREGON
# CLACKAMAS COUNTY

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR WAMU
ASSET-BACKED CERTIFICATES, WAMU
SERIES 2007-HE1 TRUST

            Plaintiff,

            v.

JOHN BURTON; MARY LOU BURTON; FALCON'S CREST
LODGE AT GOVERNMENT CAMP LLC; ROBERT H.
JOHNSON; MELODY W. JOHNSON; JEFFREY D. KANTOR;
JIMMY DRAKOS; OTHER PERSONS OR PARTIES, including
OCCUPANTS, UNKNOWN CLAIMING ANY RIGHT, TITLE,
LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE
COMPLAINT HEREIN

            Defendants.

Case No.: CV12090655

SHERIFF'S RETURN OF WRIT OF
EXECUTION - REAL PROPERTY

I certify that I received the Writ of Execution issued in the above entitled case on July 10, 2017 together
with instructions, commanding me to levy and sell all of the right, title, claim and/or interest of the
defendant(s) in the following described real property:

THE WEST ONE-HALF OF LOT 18, IDA DARR SUBDIVISION, AS CUT OFF BY A LINE DRAWN
ALONG THE EXTENSION OF THE BOUNDARY BETWEEN LOTS 13 AND 14 OF SAID IDA DARR
SUBDIVISION, CLACKAMAS, COUNTY, OREGON.
and more commonly known as 87287 E Government Camp Loop Government Camp, OR 97028

On July 11, 2017, I levied on this property by filing a Notice of Levy with this court.

On July 11, 2017, I sent copies of the Notice of Sheriff's Sale, Notice of Levy, and this Writ by Certified

Mail and by First Class Mail to the judgment debtor(s) at the address(s) provided by the judgment creditor in the Instructions to Sheriff. Copies of the Notice of Sheriff's Sale were also mailed to all other parties as instructed by the judgment creditor in the Instructions to Sheriff.

On July 12, 2017, a copy of the Notice of Sheriff's Sale was posted in a conspicuous place on the property to be sold.

The Notice of Sheriff's Sale was published in the manner required by ORS 18.924(5)(6) beginning July 19, 2017.

On August 22, 2017, at 10:00 AM, the above described property was sold at public auction at the Clackamas County Sheriff's Office, Civil Division, 807 Main St., Room 100, Oregon City, Oregon. The purchaser was Vantage Homes LLC & Rain City Capital of Oregon, LLC (for security purposes only), for the sum of $625,600.00 that being the highest and best bid. A Sheriff's Certificate of Sale, containing a detailed description of said real property, was delivered to the purchaser.

The Sheriff's fees and costs of this sale were $1010.25. I have mailed a copy of this Sheriff's Return of Writ of Execution to the judgment debtor and judgment creditor pursuant to ORS 18.872(4).

I hereby return this Writ of Execution to the Clackamas County Circuit Court on this date September 11, 2017

CRAIG ROBERTS, SHERIFF
Clackamas County, Oregon

By: _____

ADRIANNA DOMINGUEZ
ADMINISTRATIVE ANALYST 1

# EXHIBIT 9

United States Bankruptcy Court
District of Oregon

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below
was filed on 08/22/2017 under Chapter 11 of the United
States Bankruptcy Code, and entered on 08/22/2017 at
10:37 AM.



**RenX Group II, LLC**
1701 SE OAK SHORE LN
Portland, OR 97267
Tax ID / EIN: ███████

The case was filed by the debtor's attorney:

**THEODORE J PITEO**
Michael D. O'Brien & Associates
12909 SW 68th Pkwy
Suite 160
Portland, OR 97223
(503) 786-3800

The case was assigned case number 17-33139-tmb11 to Judge Trish M Brown.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page https://ecf.orb.uscourts.gov or at the Clerk's Office, 1001 SW 5th
Ave #700, Portland, OR 97204., or at https://ecf.orb.uscourts.gov with a PACER login which may be
obtained at http://www.pacer.gov.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

## U.S. Bankruptcy Court

### PACER Service Center

**Transaction Receipt**

| 08/28/2017 10:10:08 | | | |
|---|---|---|---|
| **PACER Login:** | ███████ | **Client Code:** | |
| **Description:** | Notice of Filing | **Search Criteria:** | 17-33139-tmb11 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |
